UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| CHRIS R. & KELLY A. SCHOTT, ) | Case No. 05-49765-293 |
| ) | Chapter 7 |
| ) | Motion No. 9 |
| Debtors. ) | (Publish) |

## MEMORANDUM OPINION

This case is before the Court on the United States Trustee's ("UST") motion to dismiss Debtors' case for substantial abuse under 11 U.S.C. §707(b) (2004)[1]. The Court will grant the UST's motion because Debtors have sufficient disposable income to fund a Chapter 13 plan.

**JURISDICTION AND VENUE**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

---

[1] Debtors filed their petition for relief before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Thus, all statutory references are to the pre-BAPCPA version of the Bankruptcy Code.

**FINDINGS OF FACT**

Debtors filed their petition for relief under Chapter 7 of the Code on July 14, 2005.  Debtors listed their joint net monthly income at $7,195.00 in their Schedule I and their total monthly expenses at $7,096.50 in their Schedule J.  Debtors listed $86,802.00 in non-priority unsecured debt on their Schedule F.

The parties stipulated that if Debtors reduced their monthly expenses by approximately $750.00 per month, they could pay 35% of their scheduled non-priority unsecured claims in a Chapter 13 plan.  The parties also stipulated that Debtors' debts were primarily consumer in nature.

The UST challenged three of Debtors' expenses in particular as excessive in its motion to dismiss.  These expenses are: (1)  Debtors' $505.00 per month payment in tuition to a private Catholic grade school (the "Parochial School") for their three children; (2) Debtors' $650.00 per month expenditure in premiums for life insurance policies; and (3) Debtors' payment of  $158.00 per month for their children to play soccer for elite teams and to attend soccer camps.

Only Debtor Chris Schott testified at the hearing on the UST's motion.  With respect to the decision to send the children to the Parochial School, Chris testified that he and his wife made that decision based on the following factors.

First, Chris testified that the primary factor in sending the children to the

Parochial School was that he had heard that students in the local public school district, the Oakville/Mehlville District, had below average standardized tests when their eldest child entered kindergarten five years ago. Second, both Chris and his wife, Kelly, are practicing Catholics and they wanted to send their children to a school that shared and reinforced their religious beliefs. Third, the children participate in extracurricular activities in the parish and both Debtors are active in the parish community. Finally, Chris testified that the local public elementary school, Oakville Elementary, was closed for renovations and the children would be placed in different schools throughout the school district.

Chris conceded under questioning by the UST that Oakville Elementary had reopened in August 2005. The UST also produced evidence that the students at Oakville Elementary scored at or above the Missouri average in standardized testing in reading, math, and language arts in the 2004-05 academic year. Chris admitted that he had not recently investigated the standardized testing results of the students at Oakville Elementary.

The UST also questioned Chris concerning Debtors' $650.00 per month expense in life insurance premiums. Chris testified that both he and Kelly have significant policies in place and that each of his three children have smaller policies. Chris also testified that Kelly's premiums are above average because she is a survivor

of breast cancer. Debtors' Schedule B reveals that Chris' life insurance policy is a whole life policy with a cash value of approximately $3,000.00 as of the petition date.

Chris also testified concerning the $158.00 per month expense for the elite soccer teams and the soccer camps. Chris stated that all three of his children enjoy playing for the select soccer teams. Chris also maintained that all three of the children have above average skill and that that skill is encouraged and enhanced by playing for the elite teams and attending the camps. Chris did admit that the three children could play soccer for the local parish team at a significantly reduced cost even if the children were to attend the local public school.

## CONCLUSIONS OF LAW

*A. Introduction*

Section 707(b) of the Bankruptcy Code recites in relevant part that the court on the motion of the UST may dismiss a case of a debtor filed under Chapter 7 if debtor's debts are primarily consumer debts and if granting the debtor relief would be a substantial abuse of the provisions of Chapter 7. Section 707(b) additionally states that there shall be a presumption in favor of granting the debtor relief under Chapter 7. The UST has the burden of producing sufficient evidence to rebut this presumption. In re Reeves, 327 B.R. 436, 440 (Bankr. W.D. Mo. 2005).

The parties stipulated that Debtors' debts are primarily consumer debts. Thus,

the issue in dispute here is whether granting Debtors relief would be a substantial abuse of the provisions of Chapter 7.

In this Circuit, a finding that a debtor has sufficient disposable income to fund a Chapter 13 plan standing alone is sufficient to conclude that granting the debtor relief constitutes substantial abuse for purposes of §707(b). <u>Stuart v. Koch (In re Koch)</u>, 109 F.3d 1285, 1289 (8th Cir. 1997). The analysis, therefore, focuses on whether the debtor has sufficient disposable income, as that term is defined by 11 U.S.C. §1325(b)(2), to fund a Chapter 13 plan. <u>In re Zuehlke</u>, 298 B.R. 610, 614 (Bankr. N.D. Iowa 2003).

Section 1325(b)(2) defines disposable income as net income minus the expenses that are reasonably necessary to support or maintain the debtor or the debtor's dependents. <u>Koch</u>, 109 F.3d at 1289. And although the UST has the burden of establishing that Debtors have sufficient disposable income to fund a Chapter 13 plan, the UST need not derive a precise mathematical calculation. <u>Zuehlke</u>, 298 B.R. at 615.

*B. Debtors' payment of tuition for the Parochial School is not reasonably necessary.*

The UST first argues that the Debtors' expense of $505.00 per month in tuition for the Parochial School is not reasonably necessary for the support or maintenance of the children. The Court agrees.

5

A mere parental preference to send a child to a parochial school does not make that expense reasonably necessary under the substantial abuse analysis. In re Rathbun, 309 B.R. 901, 907 (Bankr. N.D. Tex. 2004). Rather, the debtor must demonstrate that either the local public school system is deficient or that the private school can meet a particular educational need of the child that the local public school cannot. Watson v. Boyajian (In re Watson), 309 B.R. 652, 661 (B.A.P. 1st Cir. 2004) aff'd. 403 F.3d 1 (1st Cir. 2005); In re Carlton, 211 B.R. 468, 482 (Bankr. W.D.N.Y. 1997); In re Jones, 55 B.R. 462, 467 (Bankr. D. Minn. 1985).

Debtors' primary contention is that they sent the children to the Parochial School because they believed that the students at Oakville Elementary had below average standardized test scores. But the UST produced uncontroverted evidence that the students at Oakville Elementary actually had above average standardized test scores. Chris further conceded that he had not personally examined the results of the standardized test scores at Oakville Elementary since his first child began kindergarten five years ago.

Debtors also cited their desire to have their children attend a school that shared and transmitted their own religious beliefs as a reason for sending their children to the Parochial School. But Chris testified that the children could still participate in parish activities and athletics even if they did not attend the Parochial School. Also, there

6

was no evidence adduced that Debtors' religious beliefs compelled them to send their children to a religious school.

Chris testified that an additional reason that they sent their children to the Parochial School was that Oakville Elementary was under construction and not open. But Chris admitted under questioning by the UST that construction of Oakville Elementary has been completed in time for the 2005-2006 academic year.

Based on this evidence, the Court finds that Debtors' children can obtain an adequate education in the Oakville/Mehlville school district. Also, there is no evidence that the Parochial School can meet a particular educational need of Debtors' children that the local public school cannot. Thus, the Court finds that Debtors' expense of $505.00 per month on the tuition for the Parochial School is not reasonably necessary to support or maintain Debtors' children.

*C. Debtors' Payment of $650.00 per month in insurance premiums is excessive.*

The Court also finds that a significant portion of the $650.00 per month in life insurance premiums is also not a reasonably necessary expense. There is no blanket rule as to whether life insurance premiums are a reasonably necessary expense under §1325(b)(2). Smith v. Suprgeon (In re Smith), 207 B.R. 888, 890 (B.A.P. 9th Cir. 1996). Rather, the court should examine the particular type of life insurance policy in question along with the debtor's need to replace her income to protect her

7

dependents financially if she dies. Id.

Under this standard, the premium on a term life insurance policy that reasonably provides for the debtor's dependents by replacing debtor's income in case of debtor's death is a reasonably necessary expense. However, the portion of the premium applied to increase the cash value of a whole life policy is simply a savings device and is not a reasonably necessary expense. In re Leung, 311 B.R. 626, 631 (Bankr. S.D. Fla. 2004); In re DeRosear, 265 B.R. 196, 211 (Bankr. S.D. Iowa 2001); In re Heffernan, 242 B.R. 812, 817 (Bankr. D. Conn. 1999). Also, the premium paid for life insurance policies on a debtor's child is not a reasonably necessary expense. In re Nolan, 140 B.R. 797, 803 (Bankr. D. Col. 1992).

Debtors have three young children and both are employed, so there is certainly a need for both to have adequate term life insurance in place to replace their respective incomes in case of death. Also, the premium on Kelly's term policy is above average because she is a breast cancer survivor.

But Chris' policy is a whole life policy so that a portion of the premium increases the cash value of the policy. In fact, as of the petition date, Chris's whole life policy had a cash value of $3,000.00. Also, Debtors have life insurance policies on all three of the children. Both the portion of the premium on Chris' whole life policy that increases the policy's cash value and the entire premium paid for the

children's policies are not a reasonably necessary expense under §1325(b)(2).

*E. Debtors' expense for soccer clubs and camps are not reasonably necessary.*

The Court also finds that Debtors' expense of $158.00 per month for their children to play on elite soccer clubs and to attend soccer camps is not a reasonably necessary expense. Debtors contend that all three of their children have above average soccer skill and playing for elite soccer teams and attending soccer camps encourage and enhance that skill.

While it is certainly laudable that Debtors desire to enhance and encourage their children's interest, the expense of playing for elite sports teams and attending sports camps is simply not reasonably necessary for the support or maintenance of the children. In re Walsh, 287 B.R. 154, 157 (Bankr. E.D.N.C. 2002). This is particularly true here because all three of the children can continue to play soccer for the local parish team even if they do not attend the Parochial School.

CONCLUSION

Debtors stipulated that they could pay approximately 35% of their scheduled non-priority unsecured claims in a Chapter 13 plan if they reduced their expenses by $750.00 per month. The UST demonstrated that Debtors could not include the following expenses as reasonably necessary in calculating their disposable income in a Chapter 13 plan: (1) the $505.00 per month expense for the Parochial School tuition;

(2) the portion of the life insurance premium used to increase the cash value of Chris' whole life policy and the entire premium for the children's policies; and (3) the $158.00 per month for the children playing for elite soccer teams and attending soccer camps.

Although the UST did not establish precisely how much of the $650 monthly life insurance premium expenses would not be a reasonably necessary expense, the Court finds that the evidence adduced at the hearing demonstrates a high probability that Debtors would have to reduce their expenses by at least $750.00 per month in a Chapter 13 plan. Thus, given Debtors' stipulation that they could pay 35% of the scheduled non-priority unsecured claims in a Chapter 13 plan if the reduced their expenses by $750.00 per month, the Court finds that Debtors have sufficient disposable income to fund a Chapter 13 plan. The Court, therefore, holds that the UST has established that granting Debtors relief under Chapter 7 of the Code would constitute a substantial abuse and will grant the UST's motion to dismiss.

An Order consistent with this Memorandum Opinion will be entered this date.

DATED: March 23, 2007
St. Louis, Missouri

David P. McDonald
United States Bankruptcy Judge

Copy mailed to:

Chris R. Schott
Kelly A. Schott
3024 Cambridge Point Dr.
Saint Louis, MO 63129

Douglas Anthony Walker
Macey & Aleman
515 Olive Street, Ste 702
St. Louis, MO 63101

John LaBarge, Jr.
15 Sunnen Dr, Ste 115
St. Louis, MO 63143

Leonora S. Long
Office of United States Trustee
111 So. 10th Street, Suite 6353
St. Louis, MO 63102